**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ALFRED VAUGHN MOORE,

                      Plaintiff,

        - v -                                    Civ. No. 1:16-CV-270
                                                           (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendants.

**APPEARANCES:**                                 **OF COUNSEL:**

OFFICE OF PETER M. MARGOLIUS        PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff
7 Howard Street
Catskill, New York 12414

SOCIAL SECURITY ADMINISTRATION      DAVID L. BROWN, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER[1]

Plaintiff Alfred Vaughn Moore brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of the Commissioner's decision denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed in appealing a denial of Social Security benefits. Both parties have filed briefs. Dkt. Nos. 10, Pl.'s Br.,

---

[1] On March 29, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have a magistrate judge exercise full jurisdiction over this matter. Dkt. No. 7.

11, Def.'s Br. For the reasons that follow, the decision of the Commissioner is **affirmed**.

## I. BACKGROUND

On July 11, 2013, Plaintiff filed applications for DIB and SSI, alleging disability beginning on July 30, 2009. Dkt. No. 8, Admin. Transcript [hereinafter "Tr."] at p. 10. Plaintiff was born on July 8, 1964. *Id.* at p. 142. For the majority of his life, Plaintiff worked in construction. *Id.* at p. 147. Plaintiff stopped working on September 26, 2008, when he suffered an injury to his lower back at work. *Id.* at p. 146. The accident occurred when Plaintiff stepped off a foundation into mud and twisted his right leg. *Id.* at p. 265. Since that date, Plaintiff has suffered lower back pain that has prevented him from working and limited his activities. *Id.* at pp. 27-28, 156, & 159-60. Plaintiff has been diagnosed with degenerative disc disease of the lumbar spine and lumbago. *Id.* at pp. 227.

Plaintiff's claim was initially denied on October 2, 2013. *Id.* at pp. 54-57. Plaintiff requested a hearing, which was held in White Plains, New York on August 8, 2014 before Administrative Law Judge ("ALJ") Katherine Edgell. *Id.* at p. 21. Plaintiff appeared and testified by video, and was represented by a non-attorney representative, Janice Cammarato. *Id.* at p. 23. The ALJ also heard testimony from Esperanzo DiStefano, a vocational expert ("VE"). *Id.* at p. 44. On October 8, 2014, the ALJ issued a written decision finding that Plaintiff was not disabled under the Social Security Act. *Id.* at pp. 10-16. On January 4, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Acting Commissioner. *Id.* at pp. 1-3. Plaintiff timely filed this action on March 7, 2016. Dkt. No. 1, Compl.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability[2]

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id.* at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in substantial gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such

---

[2] The requirements for establishing disability for the SSI program are identical to the requirements under Title II of the Social Security Act for entitlement to DIB. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c.

an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(g) & 416.920(g).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health & Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Edgell's Findings

ALJ Edgell noted that for the purposes of Plaintiff's DIB application, Plaintiff met the

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

insured status requirements of the Social Security Act through March 31, 2014. Tr. at p. 12. Using the five-step disability evaluation, ALJ Edgell found that: (1) at Step One, Plaintiff had not engaged in substantial gainful activity since July 30, 2009, the alleged onset date; (2) at Step Two, Plaintiff has severe medically determinable impairments, specifically, degenerative disc disease of the lumbar and cervical spine and lumbago; (3) at Step Three, Plaintiff's impairments do not meet or medically equal any impairment listed in Appendix 1, Subpart P of the Social Security Regulation; (4) Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); (5) at Step Four, Plaintiff is capable of performing past relevant work as a labor foreman. *Id.* at pp. 12-16.

### D. Plaintiff's Contentions

Generally, Plaintiff argues that: (1) the ALJ's RFC assessment is not supported by substantial evidence and (2) the ALJ did not give proper weight to the opinion of Kenneth Hansraj, M.D., Plaintiff's treating physician. Pl.'s Br.

*1. The ALJ's RFC Assessment*

The RFC is an assessment of "what an individual can still do despite his or her limitations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. 1996)). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* (quoting SSR 96-8p, 1996 WL 374184, at *2). When making the RFC

determination, the ALJ considers all of the relevant medical and other evidence in the record in order to assess a claimant's physical abilities, mental abilities, and other limitations that could interfere with performing work activities on a regular and continuing basis. 20 C.F.R. §§ 404.1545(a)-(c) & 416.945(a)-(c). An RFC finding will be upheld where there is substantial evidence in the record to support each requirement listed in the Regulations. *See LaPorta v. Bowen*, 737 F. Supp. 180, 181 (N.D.N.Y 1990).

> Considering the entire record, the ALJ found that Plaintiff had the RFC
>
> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant is capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally. He can stand or walk for 6 hours per 8-hour day, for 1 hour at a time, or walking 1 mile at a time. He can sit for 2 hours per 8-hour day for 30 minutes at a time. He can perform occasional overhead reaching, stair climbing, twisting, stooping, kneeling and squatting.

Tr. at p. 13.

As defined by the Regulations, light work requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) & 416.967(b). "[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

In reaching this RFC assessment, the ALJ found that Plaintiff's statements concerning his symptoms were not entirely credible due to (1) their inconsistency with Plaintiff's description of his daily activities; (2) the routine treatment Plaintiff received for his impairments; and (3) Plaintiff's appearance at the hearing. Tr. at p. 15. The ALJ assigned great weight to the opinion of Jose Corvalan, M.D., some weight to the opinion of Marilyn Miller, N.P., and little weight to the opinion of Kenneth Hansraj, M.D. *Id.* The ALJ also assigned some weight to the opinions of Marc Bergeron, M.D. and Mary McLarnon, M.D., although they related to a period before the alleged

onset date of disability. *Id.* at pp. 14-15.

Plaintiff's argument first focuses on the ALJ's conclusion that Plaintiff was occasionally capable of overhead reaching, twisting, stooping, kneeling, and squatting. *Id.* at p. 3. Plaintiff asserts that this conclusion is contrary to the opinions of Dr. Hansraj, NP Miller, Dr. Bergeron, and John Shaughnessy, D.C., and is therefore unsupported by substantial evidence. *Id.* at pp. 3-4. Plaintiff does not appear to challenge the ALJ's finding that he was otherwise capable of performing light work, with additional limitations. Second, Plaintiff asserts that the ALJ incorrectly applied the treating physician rule in evaluating the opinion of Dr. Hansraj. *Id.* at p. 5. Upon review, the Court determines that the ALJ's RFC assessment is supported by substantial evidence and that the ALJ correctly applied the treating physician rule.

### a. Summary of Relevant Evidence

#### i. Testimonial Evidence

Plaintiff completed the ninth grade and one year of training with the Local 17 Laborer's Union. Tr. at p. 27. Plaintiff worked for the same construction company for over thirty years, and at the time of his injury on September 26, 2008, was employed as a labor foreman. *Id.* at pp. 41-42. As labor foreman, Plaintiff would direct other workers and would work on all aspects of a project. *Id.* Plaintiff would also operate a forklift. *Id.* at p. 43. Plaintiff states that he has not worked in any capacity since his injury. *Id.* at p. 27.

Plaintiff states that he has "throbbing" lower back pain, which is more on the right side. *Id.* at p. 28. However, his pain does not travel down his legs. *Id.* at pp. 27-28. Plaintiff stated that his pain was a "little better" than when he was first injured and that he had "learned to deal with pain." *Id.* at p. 28. Plaintiff's pain often wakes him up at night. *Id.* at p. 38. On his function report,

Plaintiff reported that he can lift up to twenty pounds at a time, stand for one hour at a time, walk for about a mile at a slow pace, sit for thirty minutes at time, and climb stairs at a slow pace. *Id.* at pp. 160-61. Plaintiff stated that he did not kneel and overhead reaching was difficult. *Id.* at p. 161. At the hearing, Plaintiff reported that twisting or bending agitated his back. *Id.* at p. 37. Whenever his back was agitated, Plaintiff would lie down for thirty-to-forty five minutes and bring his knees towards his chest, which would loosen it up. *Id.* Plaintiff reported that his back felt best, on the other hand, when he was walking. *Id.* at p. 38. Plaintiff stated that "constantly moving around and staying active helps." *Id.* at p. 36. Plaintiff stated that Dr. Hansraj had told him to avoid overhead reaching. *Id.* at p. 39.

At the time of the hearing, Plaintiff lived with his girlfriend and her sixteen-year old niece in a basement apartment. *Id.* at pp. 24-25. To reach the apartment, there is a flight of stairs with four steps. *Id.* at p. 24. Plaintiff previously had lived in a second-floor apartment that required climbing a flight of stairs. *Id.* at p. 25. On a daily basis, Plaintiff would wash and dress himself, make himself breakfast and lunch, and watch the news. *Id.* at pp. 31-32. He stated that it was difficult to put on his clothes. *Id.* at p. 156. Plaintiff stated that he would "usually put [his] feet up on the sink" to "put [his] socks on." *Id.* at p. 39. Depending on the weather, he would often go outside and walk his dog, a boxer, around the yard. *Id.* at p. 31. During the summer months, Plaintiff reported that he would spend most of his time outside with his dog and would "go to the Rail Trail a lot and walk her for like an hour." *Id.* at p. 32. Plaintiff stated that he cannot "sit for a long period of time, so [he would] constantly pace around the house." *Id.* If the lawn needed it, Plaintiff would cut the grass using a push mower. *Id.* at p. 31. The lawn was about an acre-and-a-half, but Plaintiff would typically only use the mower for thirty-to-forty minutes at most in one day.

*Id.* at p. 37. Plaintiff also reported that he would do some light chores, such as dishes, mopping, sweeping, and laundry. *Id.* at p. 32. Plaintiff stated that these activities might take him longer to do than they formerly did. *Id.* at p. 158. Plaintiff's grandchildren occasionally visit him, and they usually go to the park together, which is a quarter mile away. *Id.* at p. 34. Once a month, Plaintiff shops for groceries with a friend. *Id.* at p. 159. Plaintiff is able to drive and travel alone. *Id.* at p. 26.

### ii. Opinion Evidence

#### *Dr. Hansraj*

On October 28, 2008, Plaintiff had an MRI of his lumbar spine, which showed "right lateral osteophytic ridge disk complex at L4-5 which may impinge the exiting nerve root on the right." Tr. at pp. 270-71. That same month, Plaintiff also had x-rays of his cervical and lumbar spine at New York Spine Surgery & Rehabilitation Medicine, where he was treated by Dr. Hansraj. *Id.* at pp. 204 & 208. The x-ray of Plaintiff's cervical spine showed degenerative changes at C5-C6 and the x-ray of Plaintiff's lumbar spine showed diffuse degenerative spondylosis, narrowing of the L5-S1 disk space, end plate spur formation throughout the lumbar spine, and mild thoracolumbar scoliosis convex to the right. *Id.*

Dr. Hansraj saw Plaintiff for evaluation on October 8, November 5, December 10, and December 22, 2008. *Id.* at pp. 202, 211, 221, & 230. On October 8, 2008, Plaintiff rated his back pain as seven out of ten and that bending, lifting, twisting, reaching, coughing, and sneezing aggravated it. *Id.* at p. 230. Plaintiff stated that he felt better walking, standing, and driving, and worse sitting, sleeping, and working. *Id.* On physical examination, Plaintiff's reflexes and muscle strength were normal. *Id.* at pp. 232-33. Plaintiff had negative straight leg raises, bowstring test,

and femoral nerve stretch. *Id.* at p. 233. Plaintiff's hips had a normal range of motion. *Id.* Dr. Hansraj recommended Plaintiff for a conservative course of treatment, including physical therapy, aerobic fitness, and a back brace. *Id.* at pp. 234-35. On December 10, Dr. Hansraj noted that Plaintiff was seeing some improvement attending physical therapy and using a back brace and TENS unit, although he continued to experience back pain. *Id.* at p. 211. At that time, Plaintiff reported that his back pain was two out of ten and his neck pain was three out of ten. *Id.* Dr. Hansraj advised Plaintiff "to get aerobically fit and walk as much as he can" and "stressed the importance of avoiding bending, lifting, twisting and reaching as much as possible." *Id.* On December 22, Plaintiff reported that his back pain was one out of ten and neck pain was one out of ten. *Id.* at p. 221. In his notes, Dr. Hansraj opined that Plaintiff was "100% disabled, temporarily," but that he was "willing to re-train to a position that does not involve bending, lifting, twisting and reaching." *Id.* at p. 228. He further noted that it would be "unsafe" for Plaintiff to return to his previous position as a labor foreman due to the bending, twisting, reaching, and lifting required by that position. *Id.*

Plaintiff again saw Dr. Hansraj on April 28, 2010. *Id.* at p. 239. Plaintiff reported that he continued to experience lower back pain, but that it had improved. *Id.* Plaintiff rated his pain as four out of ten. *Id.* Dr. Hansraj reiterated his earlier impressions, stating that Plaintiff "remains 100% disabled permanently" and that it would be unsafe for him to return to a position involving bending, lifting, twisting, and reaching. *Id.* at p. 240.

Dr. Hansraj also completed a physical RFC questionnaire on that date. *Id.* at pp. 305-09. On the questionnaire, Dr. Hansraj indicated that Plaintiff could sit for one hour or stand for one hour continuously at a time, and that Plaintiff would require a job that would allow shifting of positions at will and would need unscheduled breaks. *Id.* at pp. 307-08. Dr. Hansraj also indicated that

*-11-*

Plaintiff could occasionally lift less than ten pounds, but never lift more than ten pounds. *Id.* at p. 308. Dr. Hansraj opined that Plaintiff has significant limitations for repetitive reaching, handling, and fingering, and was unable to bend or twist. *Id.* at pp. 308-09.

### *Dr. Corvalan*

Plaintiff saw Dr. Corvalan for a consultative examination on September 10, 2013. Tr. at p. 261. Plaintiff reported to Dr. Corvalan that he cleans and shops two or three times a week, and walks his dog, showers, and dresses himself daily. *Id.* at p. 261. Plaintiff also stated that he does not do much cooking or laundry. *Id.* Plaintiff stated that he had constant pain, which was aggravated by sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects. *Id.* Plaintiff stated that he had attended physical therapy for two years and had seen improvements while he was attending. *Id.* At the time of the examination, the only medication Plaintiff was taking was ibuprofen. *Id.*

On examination, Dr. Corvalan noted that Plaintiff's gait and station were normal and that he was able to walk on his toes, but could not walk on his heels because it bothered his lower back. *Id.* at p. 262. Plaintiff was able to fully squat and needed no help changing for the exam or getting on and off the exam table. *Id.* Plaintiff was able to raise from his chair without difficulty. *Id.* Upon examination, Plaintiff experienced some tenderness in the lumbar spine and had flexion fifty degrees, extension fifty degrees, lateral flexion thirty degrees bilaterally, and rotation thirty degrees bilaterally. *Id.* Plaintiff had a positive straight leg raise at thirty degrees bilaterally in both the supine and sitting positions. *Id.* In his upper and lower extremities, Plaintiff had full range of motion, strength 5/5 in proximal and distal muscles, and no muscle atrophy, sensory abnormality, joint effusion, inflammation, or instability. *Id.* Plaintiff's reflexes were physiologic and equal. *Id.*

Plaintiff experienced some stiffness and discomfort in his cervical spine during the testing. *Id.* Dr. Corvalan reviewed an x-ray of Plaintiff's lumbar spine which showed degenerative changes. *Id.*

Based on his examination, Dr. Corvalan indicated that Plaintiff's prognosis was stable. *Id.* at p. 263. Dr. Corvalan assessed Plaintiff with moderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects. *Id.*

### *NP Miller*

NP Miller completed a physical evaluation of Plaintiff on June 23, 2014. *Id.* 274-79. NP Miller opined that Plaintiff could lift and carry up to ten pounds frequently, and up to twenty pounds occasionally. *Id.* at p. 274. She also opined that Plaintiff could sit and stand for up to two hours, and walk for up to four hours, during an eight-hour workday. *Id.* at p. 275. She indicated that Plaintiff could never perform overhead reaching or pushing or pulling, but could continuously perform other reaching, handling, fingering, feeling, and operation of foot controls. *Id.* at p. 276. She further opined that Plaintiff could never perform climbing, balancing, stooping, kneeling, crouching, or crawling. *Id.* at p. 277. She stated that Plaintiff should avoid unprotected heights, extreme cold, and vibrations. *Id.* at p. 278. Finally, she reported that Plaintiff would be able to perform activities such as shopping, traveling without a companion, ambulating without a cane, walking a block on rough or uneven surfaces, using public transportation, climbing a few steps with the use of a hand rail, preparing a simple meal, caring for personal hygiene, and sorting or handling paper or files. *Id.* at p. 279.

### *Sources that Pre-Date the Onset Date*

The record also contains a number of other medical statements that predate the alleged onset date of July 30, 2009, including the opinions of Dr. Bergeron, Dr. McLarnon, and Mr. Shaughnessy

and Seth Gross, D.C., both chiropractors.

In an opinion dated June 18, 2009, Dr. McLarnon, a state agency medical consultant, opined that Plaintiff would be able to stand or walk for six hours, climb stairs frequently, and climb ladders or stoop occasionally. Tr. at p. 325.

In an opinion dated December 29, 2008, Dr. Bergeron opined that Plaintiff would be able to push, pull, lift, or carry up to thirty pounds occasionally and fifteen pounds frequently. *Id.* at p. 315. He stated that Plaintiff should not stoop or reach and should "not be in a position where he has to have large range of motion of his lumbar area." *Id.*

On April 21, 2009, Mr. Gross completed an examination of Plaintiff. *Id.* at pp. 316-21. Mr Gross opined that Plaintiff could lift and carry up to twenty pounds occasionally, stand or walk for up to six hours, sit for less than six hours, and could not push or pull more than forty pounds. *Id.* at pp. 320-21. He further opined that Plaintiff could not walk more than half a mile before needing to sit. *Id.* at p. 320.

Mr. Shaughnessy completed an independent examination of Plaintiff on August 5, 2009. *Id.* at p. 265. Mr. Shaugnessy opined that Plaintiff was partially disabled " in accordance with New York State medical guidelines for workers compensation disability." *Id.* at p. 267. Mr. Shaugnessy stated that Plaintiff would be "unable to return to his prior occupation as a laborer due to the lifting and postural requirements." *Id.*

  b. The ALJ's Assessment of Plaintiff's Postural Limitations is Supported by Substantial

Evidence

The Court finds that the ALJ's assessment that Plaintiff is capable of performing occasional overhead reaching, twisting, stooping, kneeling, and squatting is supported by substantial evidence.

In particular, the ALJ's RFC assessment is consistent with the opinion and examination of Dr. Corvalan. Additionally, the RFC assessment reflects the Plaintiff's statements regarding his daily activities. The Court also finds that the ALJ assigned appropriate weight and provided adequate reasons for the weight she assigned to the opinions of Dr. Hansraj and NP Miller, and properly considered the opinions that predated the onset date of disability.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]" *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527 & 416.927). An ALJ may not "arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Under the regulations, a treating physician's opinion is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2). A treating physician's opinion is not controlling, however, if it is contradicted by other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Conflicts in the medical evidence are properly resolved by the ALJ. *Veino v. Barnhart*, 312 F.3d at 588 (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The ALJ must properly state the reasons for giving less than controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(2)(2) & 416.927(c)(2) (stating that the ALJ must give "good reasons" for the weight

assigned to a treating source opinion); *Halloran v. Barnhart*, 362 F.3d at 32.

The ALJ assigned great weight to the opinion of Dr. Corvalan because his opinion was well supported by his examination of Plaintiff. Tr. at p. 15. Dr. Corvalan assessed Plaintiff with moderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting and carrying heavy objects, but did not assess Plaintiff with any limitations in overhead reaching, twisting, stooping, kneeling, or squatting. The results of Dr. Corvalan's examination of Plaintiff were consistent with the limitations he assessed. In relevant part, his examination showed that Plaintiff had full range of motion and strength in his upper and lower extremities and was able to fully squat. *Id.* at p. 262. Plaintiff was able to rise from a chair without difficulty and needed no help changing or getting on and off the examination table. *Id.* Plaintiff's gait was normal and he was able to walk on his toes. *Id.* Dr. Corvalan's examination and opinion assessing moderate limitations is consistent with Plaintiff's testimony regarding his daily activities, in which he stated that "constantly moving around and staying active helps." *Id.* at p. 36. Accordingly, the Court finds that the ALJ provided adequate reasons and that there is substantial evidence for the weight the ALJ assigned to the opinion of Dr. Corvalan.

Conversely, the ALJ assigned little weight to the opinion of Dr. Hansraj and some weight to the opinion of NP Miller, both of whom Plaintiff relies upon. Dr. Hansraj opined that Plaintiff should avoid bending, twisting, and reaching and NP Miller opined that Plaintiff could never stoop, kneel, or reach overhead. *Id.* at pp. 209 & 276-77.

As Plaintiff's treating physician, Dr. Hansraj is entitled to controlling weight so long as his opinion is supported by medically acceptable objective findings and is not inconsistent with other substantial evidence in the record. Here, however, the Court finds that the ALJ gave "good reasons"

for the weight she assigned to Dr. Hansraj's opinion.[4] The ALJ assigned little weight to Dr. Hansraj's opinion because it was (1) unsupported by Dr. Hansraj's treatment notes and (2) internally inconsistent in its statements that Plaintiff was "100% disabled" but should also walk as much as possible and get aerobically fit. *Id.* at p. 15.

First, the Acting Commissioner correctly argues that the ultimate issue of Plaintiff's disability is an issue that is reserved for the Commissioner. *See Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003); 20 C.F.R. §§ 404.1527(d)(1) & 416.927(d)(1). Thus, Dr. Hansraj's opinion that Plaintiff is "100% disabled permanently" is not entitled to any weight. Second, the Court agrees that the limitations assessed by Dr. Hansraj are inconsistent with his treatment notes and his recommendations. Specifically, Dr. Hansraj opined that Plaintiff was "100% disabled permanently," but could also be "re-trained in a position that does not involve bending, lifting, twisting, or reaching." Tr. at pp. 240-41. Furthermore, he advised that Plaintiff should "get aerobically fit" and walk as much as possible. *Id.* at p. 258. "A treating physician's opinion . . . may be discounted when it is internally inconsistent." *Hudson v. Colvin*, 2013 WL 1500199, at *5 (N.D.N.Y. Mar. 21, 2013) (citing *Micheli v. Astrue*, 2012 WL 5259138, at *2 (2d Cir. 2012) (finding treating physician's opinion inconsistent where it expressed contrary limitations)). Similarly, Dr. Hansraj's opinion of Plaintiff's limitations is not supported by his treatment notes. Dr. Hansraj's examinations documented normal strength testing, symmetrical reflexes, and negative straight leg raises. Tr. at pp. 233, 240, 243, & 252. Although Plaintiff reported pain of 7 out of 10 on his initial visit, *id.* at p. 230, he reported improvement with physical therapy, and on subsequent visits reported pain of

---

[4] The Court here notes that Dr. Hansraj issued two opinions, one on December 2008 and one on April 28, 2010. As the Acting Commissioner argues, the earlier opinion pre-dates the alleged onset date of Plaintiff's disability. The Court discusses the opinions together since they express substantially the same limitations.

0, 2, 1, and 4 out of 10, *id.* at pp. 202, 211, 221, & 239.

Dr. Hansraj's opinion was also contradicted by other substantial evidence in the record. Dr. Corvalan assessed Plaintiff with moderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects, *id.* at p. 263, which is consistent with light work. *See, e.g.*, *Nelson v. Colvin*, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014). Dr. Hansraj's opinion as to Plaintiff's limitations for lifting or carrying was inconsistent with the opinions of NP Miller and Dr. Bergeron. Tr. at pp. 274 & 315.

Dr. Hansraj's opinion that Plaintiff is completely disabled is also inconsistent with Plaintiff's testimony. Contrary to Dr. Hansraj's finding that Plaintiff can never lift more than ten pounds, *id.* at p. 308, Plaintiff stated that he can lift up to twenty pounds, *id.* at p. 160. Plaintiff further stated that "constantly moving around and staying active helps," *id.* at p. 36, and that he accordingly walks regularly on a daily basis, including walking his dog for up to an hour, *id.* at p. 32, and mowing his lawn using a push mower for up to thirty minutes at a time, *id.* at p. 37. Plaintiff climbs a flight of stairs to reach his apartment, *id.* at p. 25, makes himself meals, *id.* at pp. 31-32, drives himself to do errands, *id.* at p. 26, washes and dresses himself, *id.* at p. 31, and balances his foot on the sink to put on his socks, *id.* at p. 39. As noted by the ALJ, Plaintiff's "admitted activities of daily living are inconsistent with his allegations of completely disabling pain." *Id.* at p. 15.

Thus, for all of the reasons listed above, the Court finds that the ALJ assigned appropriate weight to the opinion of Dr. Hansraj.

Plaintiff also relies on the opinion of NP Miller, who opined, in relevant part, that Plaintiff could never reach overhead, stoop, or kneel. Pl.'s Br. at p. 4. The ALJ assigned some weight to the opinion of NP Miller, but gave greater weight to Plaintiff's self-reported limitations and the

examination of Dr. Corvalan. Tr. at p. 15. In particular, the ALJ found that the postural limitations NP Miller assessed were "not consistent with the claimant's admission of his ability to climb stairs to his apartment [and] . . . [t]he limitations of no stooping are inconsistent with the ability to enter and exit the car to drive." *Id.* For similar reasons as articulated in its discussion of Dr. Hansraj, the Court finds that the ALJ properly discounted NP Miller's assessment of greater limitations for overhead reaching, stooping, and kneeling as inconsistent with Dr. Corvalan's examination of Plaintiff and Plaintiff's testimony of his daily activities. Thus, the Court finds that the ALJ appropriately assigned some weight to the opinion of NP Miller.

Finally, the Court turns to the opinions of Dr. Bergeron and Mr. Shaughnessy, which Plaintiff argues support greater limitations than the ALJ found. Pl.'s Br. at p. 4. Specifically, Dr. Bergeron opined that Plaintiff should never stoop or reach and Mr. Shaughnessy opined that Plaintiff was disabled due to "postural limitations." *Id.* at pp. 267 & 315. However, Dr. Bergeron and Mr. Shaughnessy's opinions predate the alleged onset date of Plaintiff's disability. "Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability." *Velez v. Colvin*, 2016 WL 884635, at *5 (D. Conn. Mar. 8, 2016) (quoting *Carway v. Colvin*, 2014 WL 1998238, at *5 (S.D.N.Y. May 14, 2014)); *see also Kentile v. Colvin*, 2014 WL 3534905, at *14 n.10 (N.D.N.Y. July 17, 2014) (stating that "the ALJ is not compelled to consider or assign weight to treatment that predates plaintiff's application for disability benefits"). Here, the ALJ assigned some weight to the opinion of Dr. Bergeron, even though it was prior to the alleged onset date, because it was consistent with other substantial evidence of record. Tr. at p. 14 n.1. The ALJ did not discuss the opinion of Mr. Shaughnessy, but an ALJ need not explain "why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability"

where "the evidence of record permits [the Court] to glean the rationale" of the decision. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). The ALJ noted that she considered the opinions that predated Plaintiff's alleged disability onset date and that is sufficient. The Court therefore finds that the ALJ did not err in her consideration of the opinions of Dr. Bergeron and Mr. Shaughnessy.

Thus, the Court finds that the ALJ properly assessed the opinion evidence and that there is substantial evidence for her determination that Plaintiff is capable of performing occasional overhead reaching, twisting, stooping, kneeling, and squatting.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date:   April 10, 2017
           Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge